IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| RETRACTABLE TECHNOLOGIES, INC., § | | |
| § | | |
| Plaintiff, § | | |
| § | Civil Action No. 6:08-cv-00120-LED | |
| v. § | | |
| § | | |
| OCCUPATIONAL & MEDICAL § | (JURY TRIAL) | |
| INNOVATIONS, LTD., § | | |
| § | | |
| Defendant. § | | |

**DEFENDANT OCCUPATIONAL & MEDICAL INNOVATIONS, LTD.'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
<u>FILED AT CLOSE OF ALL EVIDENCE</u>**

Pursuant to Fed. R. Civ. P. 50, Defendant Occupational & Medical Innovations, Ltd. ("OMI") moves for Judgment as a Matter of Law on the following grounds.

**I.     NON-INFRINGEMENT**

**1.     OMI's Syringes Do Not Use Clamping Or Friction Force To Keep The Needle In The Needle In The Projecting Position Until Released**

OMI is entitled, as a matter of law, to Judgment on Retractable Technologies, Inc.'s ("RTI") claim that OMI's syringe infringes asserted claims if the '584 patent on the grounds that there is a complete absence of proof that the accused device uses clamping or friction force to keep the needle in the projecting position until released.

All asserted claims of the '584 patent require a retainer or retainer member. Under the Court's claim construction, "a non-retractable part of the retraction mechanism that uses some clamping or frictional force to keep the needle in the projecting position until released."

Mr. Liensing testified that in OMI's syringes any frictional force between the barrel and needle holder provides a fluid seal and does not keep the needle in the projecting position until

released as required by the claims because the frictional force is less than the force of the spring. RTI has presented no evidence that the frictional force exceeds the force of the spring. Mr. Liensing testified that in OMI's syringes, the needle holder is held in place against the force of the retraction spring by a flange that projects inwardly from the inside wall of the barrel. Without that flange, the needle holder would not be held in the projecting position until released. As stated by Mr. Liensing, the use of a flange to hold the needle in the projecting position is not equivalent to use of friction for this purpose.

Mr. Sheehan's testimony that the friction force is greater than the force of the spring and is therefore sufficient to keep the needle in the projecting position is unsupported by any facts. Such conclusory, unsupported opinions are not sufficient to find that OMI practices this claim element.

As Mr. Liensing testified, there is no infringement under the doctrine of equivalents. When the patent describes problems with certain prior art mechanisms, and those mechanisms include the mechanism alleged to be equivalent to what is claimed, this is considered to be strong evidence that the allegedly equivalent mechanism operates in a substantially different way. *Dawn Equipment Co. v. Kentucky Farms, Inc.*, 140 F.3d 1009, 1016 (Fed. Cir.1998) and in the case *L.B. Plastics, Inc. v. Amerimax Home Products, Inc.*, 499 F.3d 1303, 1309 (Fed. Cir. 2007). The '584 patent criticizes U.S. Patent No. 5,084,018 (Tsao patent) for including a flange. ('584 patent col 1, l.66 – col. 2, 1.7) Therefore, the '584 patent specifically criticizes the very mechanism used in the OMI syringes and there can be no infringement under the doctrine of equivalents because the use of a flange to hold the needle holder in place and friction that only provides a fluid seal is not equivalent to using friction to hold the needle holder in place.

Accordingly, as a matter of law, Judgment of non-infringement as to all asserted claims of '584 patent should be entered because OMI's syringes do not include a retainer member as construed by the Court, either literally or under the doctrine of equivalents.

**2. OMI's Syringes Do Not Have A Plunger Tip That Contacts The Retainer Member As Required By The Asserted '584 Patent Claims**

OMI is entitled, as a matter of law, to Judgment on RTI's claim that OMI's syringe infringes the '584 patent on the grounds that RTI has offered no proof that the accused device includes the claimed plunger tip that contacts the retainer member as required by the '584 patent.

All asserted claims of the '584 patent require a plunger tip that contacts the retainer member (RTI asserts that the outer portion of the needle holder in OMI's syringes is a retainer member). Mr. Liensing testified that the plunger seal, not the plunger tip, contacts the needle holder. Therefore, there is no literal infringement. Nor can there be infringement under the doctrine of equivalents, because as Mr. Liensing testified, RTI has distinguished contacting a retainer with the tip of the plunger from contacting it with the plunger seal.

RTI has stipulated that the seal contacts the needle holder in OMI's syringe. (Stipulation No. 16) Without any support and in conclusory fashion, Mr. Sheehan testified that the plunger tip contacts the retainer in OMI syringes. This unsupported conclusion is completely inconsistent with Mr. Sheehan's recognition that the plunger head includes two separate elements, the plunger seal itself and a front tip portion. Mr. Sheehan admitted that the seal contacts the needle holder in OMI's syringes. Accordingly, Mr. Sheehan's testimony that the plunger tip contacts the retainer (according to Mr. Sheehan, the needle holder) must be rejected.

Finally, RTI has not contended or put forth any evidence that this limitation is satisfied under the doctrine of equivalents.

Accordingly, as a matter of law, Judgment of non-infringement as to all asserted claims

of '584 patent should be entered because the OMI syringes do not have a plunger tip that contacts the retainer member as required by the '584 patent claims

### 3. OMI's Syringes Do Not Have a Configured Plunger Tip As Required By Asserted The '584 Patent Claims

OMI is entitled, as a matter of law, to Judgment on RTI's claim that OMI's syringe infringes the '584 patent on the grounds that there is a complete absence of proof that the accused device includes a configured plunger tip.

All the asserted claims of the '584 patent require the plunger to have a configured tip. The specification defines Figure 17 as having a configured tip: "Tubular body 192 is a hollow body with a wall 198 which extends forward into a tip 200 at the front of plunger handle 190. Tip 200 is configured." ('584 patent col. 18, ll. 51-53) Additionally, the specification of '584 patent defines Figure 19 as having a configured tip:

> Tubular body 192 of Figs. 18 and 19 is a hollow body with a wall 198 extends forward into a tip 216 at the front of plunger handle 190. Tip 216 is configured for separating a transversely mounted retainer ring 66 from a retractable needle 22, 28 which is retracted by forward movement of the plunger at the end of an injection cycle.

('584 patent col. 19, l.65 – col. 20, l.4) The '584 patent does not describe the flat tip of Figure 1 as configured. As to Mr. Liensing testified and the evidence in this case shows, OMI's syringes do not literally infringe the asserted claims of the '584 patent because the plunger in OMI's syringes has a conventional, flat tip, not a modified "configured" tip.

According to '584 patent specification, "[t]he beauty of the present invention is that a way has been found to reduce the force on the plunger required to retract the syringe without making any changes whatsoever to the retraction mechanism itself." ('584 Patent, Col. 23, ll. 31-33) This is done by configuring the front tip of the plunger:

> In the best mode, it is believed that the stepped plunger tip is preferable to the sloped plunger although the exact shape and dimensions have not been optimized. It is clear that the basic principle of configuring the tip to apply all of the plunger force one part of the retainer ring before the plunger force is applied to the rest of the retainer ring is a fundamental principle regardless of the specific shape of the tip.

('584 Patent, Col. 23, ll. 40-47) When the claim language defines where a particular element is located, the doctrine of equivalents cannot be used to encompass moving the element to a different location because doing so would ignore the claim language defining where the element is located. *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1108-09 (Fed. Cir. 2000). Additionally, Mr. Liensing testified that the OMI syringe design does not infringe the configured tip requirement because applying a bump to a needle holder is significantly different then modifying or configuring the tip of a plunger.

Accordingly, as a matter of law, Judgment of non-infringement as to all asserted claims of '584 patent should be entered because OMI syringes do not have a configured plunger tip as required by the '584 patent claims

### 4. Non-Asserted Claims of the '584 Patent

OMI is entitled to Judgment as a Matter of Law on the non-asserted claims of the '584 patent. RTI has not asserted claims 3-6, 8-17, 20-23, and 25-28 of the '584 patent. OMI has counterclaimed for a declaratory judgment of non-infringement, literally or under the doctrine of equivalents, of any valid and enforceable claims of '584 patent and has a right to judgment on these claims.

Accordingly, OMI is entitled, as a matter of law, to Judgment of non-infringement on the non-asserted claims of the '584 patent, given RTI's failure to offer any evidence of their infringement.

## II. INVALIDITY

### 1. Obviousness

OMI is entitled, as a matter of law, to Judgment that the asserted claims of the '584 patent are invalid because they would have been obvious to a person of ordinary skill in the art in 2000 (when the application was filed).

Under section 103 of the patent statute, a patent cannot be obtained "if the differences between the subject matter to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time of the invention to a person having ordinary skill in the art." Mr. Liensing testified that claims 1-2, and 7 of the '584 patent would have been obvious in view of the admitted prior art in the preamble of claim 1 in combination with U.S. Patent No. 5,935,104 to Janek et al. (which was not considered by the patent examiner), which teaches the person of ordinary skill in the art that the force needed to activate the retraction mechanism in a retractable syringe can be reduced by modifying the front tip of the plunger to have high and low portions so that the high portion contacts the retraction mechanism first. Mr. Liensing testified that claims 18-19, and 24 of the '584 patent would have been obvious in view of the U.S. Patent No. 5,632,733 to Shaw in combination with the Janek '104 patent. The Shaw '733 patent describes all the elements set out in the preamble of claims 18 and 24, before the word "compromising." The Janek '104 patent teaches the person of ordinary skill in the art that the force needed to activate the retraction mechanism in a retractable syringe can be reduced by modifying the front tip of the plunger to have high and low portions so that the high portion contacts the retraction mechanism first.

Accordingly, OMI is entitled, as a matter of law, to Judgment that the asserted claims of the '584 patent are invalid as obvious in view of the prior art at the time the application was

filed.

## 2. Lack of Enablement

OMI is entitled, as a matter of law, to Judgment that the asserted claims of the '584 patent are invalid because they would have been obvious to a person of ordinary skill in the art in 2000 (when the application was filed).

The patent specification must teach a person of ordinary skill in the art at the time the original patent application was filed how to make and use the full scope of the claimed invention without undue experimentation. The scope of enablement is defined by (1) what is disclosed in the specification plus (2) what would be known to one of ordinary skill in the art, which may effectively be used to supplement what is disclosed in the specification.

### a. Molding The Needle Holder And Retainer Ring In a Single Piece

This Court has interpreted the claims of the '584 patent to encompass a needle holder an retainer ring that are molded in a single piece however this scope is not enabled the disclosure of the '584 patent. The specification describes two different embodiments of the retainer and needle holder. The first on is depicted in Figures 1-3. In this embodiment, the retainer and needle holder are separate parts where the inside diameter of the retainer frictionally engages the outside diameter of the needle holder. The second embodiment is depicted in Figure 8. The needle holder and retainer are separate parts, but instead of being frictionally engaged, a bridge 73 extends between the two parts. The following passage in the specification states how this structure can be made.

> It is believed that the increased diameter of the raised portion 73 should be within the range of about 1 to 8 thousandths of an inch which may be dictated by the ability of the molding equipment available to produce a consistent bridging portion without defects. It is believed that it may be desirable to employ different polymeric materials for the retainer ring and needle holder to facilitate tack welding, such as a suitable polyvinyl chloride (PVC) for the retainer ring and a

> suitable polycarbonate plastic material for the needle holder. One way to couple these two parts may be to assemble them and expose them to a temperature of about 120°C. for twenty minutes or so to allow some diffusion or incipient melting to occur where they touch. The raised portion creates a high unit pressure where it comes into contact with the inwardly facing surface of retainer 66a. Sonic welding could be employed. A coating or adhesive which couples the retainer ring to the needle holder and can be uncoupled by means of force applied to the retainer ring by the plunger is also within the contemplation of the invention.

('584 patent, col. 12, ll. 21-40; '224 patent, col. 11, ll. 14-33) This passage describes possible ways in which the two parts (retainer and needle holder) can be joined. As Mr. Liensing testified, it does not describe to the person of ordinary skill in the art how the retainer and needle holder can be molded in a single piece. Mr. Liensing testified that the above description of how two parts can be joined is not correct, because one would normally choose to tack weld two similar materials together. According to Mr. Liensing, one would not purposely choose two different materials (such as PVC and polycarbonate plastic) to tack or ultrasonically weld together as suggested in the patents.

Mr. Liensing testified that molding the retainer and needle holder in a single piece presents a difficult engineering problem, because it must satisfy a number of functions. It must be designed with the proper material and have a thin molded section so that the retainer can be broken or sheared from the needle holder under an appropriate activation force. At the same time, it must be made of a material that provides a seal and a high friction force between the retainer and barrel to hold the needle holder in place in normal use while also being rigid enough to support the needle. It is particularly difficult to design such a component that provides the high friction force while at the same time being rigid and having a thin shearable section. The material must also be resistant to sterilization, heat, and creep.

According to Mr. Liensing's testimony, a person of ordinary skill in the art reading the

DM_US:22985299_1

8

patent specification would have to engage in trial and error, undue experimentation to design a needle holder and retainer molded in one piece that provided all the characteristics necessary for the retainer and needle holder to perform their required functions in the retractable syringe described and claimed in the patents.

Accordingly, OMI is entitled, as a matter of law, to Judgment that the asserted claims of the '584 patent are invalid for failure to meet the enablement requirement.

### b. The Retainer Ring And Plunger Plug

The patent specifications state that the stopper (that is, the plunger plug) and the ring member (that is, the retainer) should be made from Santoprene® 181-55, which has a Shore A durometer scale hardness of around 55. Mr. Shaw testified that RTI was not able to get Santoprene® 181-55 to work for the plunger plug and retainer. The material that Mr. Shaw did get to work for the plunger plug and retainer was Santoprene® 283-40 having a durometer hardness of 40 on the Shore D durometer scale. Santoprene® 181-55 and Santoprene® 283-40 are completely different materials and have different properties and functional characteristics. Mr. Liensing testified that given that the patent specification misdirects the person of ordinary skill in the art to use Santoprene® 181-55 for the retainer and plunger plug, the person of ordinary skill in the art would have to engage in trial and error, undue experimentation to design a retainer and plunger plug that would function properly in the syringe design disclosed in the patents.

Accordingly, OMI is entitled, as a matter of law, to Judgment that the asserted claims of the '584 patent are invalid for failure to meet the enablement requirement.

### 3. Best Mode

OMI is entitled, as a matter of law, to Judgment that the asserted claims of the '584 patent

are invalid because the inventors of the '584 patent did not disclose the best mode of practicing the invention at the time the patent application.

"[T]he specification shall . . . set forth the best mode contemplated by the inventor of carrying out his invention." 35 U.S.C. § 112(1), (2). The Federal Circuit has set forth a two step analysis to determine whether the best mode requirement has been satisfied. First, the fact finder must determine whether, at the time of filing the application, the inventor possessed a best mode for practicing the invention. *Eli Lilly & Co. v. Bar Labs, Inc.*, 251 F.3d 955, 963 (Fed. Cir. 2001). "Second, if the inventor possessed a best mode, the fact finder must determine whether the written description disclosed the best mode, such that one reasonably skilled in the art could practice it." *Id.; see also, Taltech Ltd. v. Esquel Apparel, Inc.*, 2008 WL 2165996 at *3 (Fed. Cir. May 22, 2008); *Go Medical Indus. Pty., Ltd. v. Inmed Corp.*, 471 F.3d 1264, 1271 (Fed. Cir. 2006).

### a. Material for the Retainer Ring and Plunger Plug

The asserted claims of the '584 patent contain the term retainer and plunger. They also recite a plunger as a component of the syringe, which according to the specification includes a "plug or stopper 42." The specification states: "In the best mode the stopper and the ring member are preferably made from a thermoplastic rubber material designated number 181-55 available from Advanced Elastomer Systems, 540 Maryville Central Drive, St. Louis, Mo. and sold under the trade name Santoprene®. It is said to have a characteristic hardness around 55 on the Shore A durometer scale." ('584 patent, col. 24, ll. 12-18) "Stopper" refers to the plunger plug and "ring member" refers to the retainer.

Mr. Shaw testified that all of the drawings of the retainer and plunger plug from May 16, 1994 until years after the filing date of the '584 patent application in 2000 specify that the

retainer ring and plunger plug be made from Santoprene® 283-40 with a hardness of 40 on the Shore D durometer scale, not Santoprene® 181-55 identified in the patent specifications as the best mode. Mr. Liensing testified that Santoprene® 181-55 and Santoprene® 283-40 are different materials.

The Santoprene® 181-55 disclosed as the best mode in the '584 patent for the retainer and plunger plug was not what Mr. Shaw and RTI used. In fact, Mr. Shaw testified that they were not able to get that material to work. The actual material that they did use, Santoprene® 283-40, was not disclosed in the '584 patent. By stating in the specification that the best mode for the ring member (retainer) and stopper (plug) is to make them out of Santoprene® 181-55, rather that Santoprene® 283-40 that was actually used from before the time that the '584 patent was filed, the patent failed to disclose the best mode of the claimed invention contemplated by Mr. Shaw at the time the application was filed.

Accordingly, OMI is entitled to Judgment as a Matter of Law that the claims of the '584 patent are invalid for failure to disclose the best mode material for retainer and plunger which was known to the inventors at the time the patent application was filed.

### b. Plunger Seal Material

The asserted claims of the '584 patent all include a plunger as a component of the syringe. The specification shows that the plunger includes a plunger seal, which it must include in order to provide a fluid seal with the inside of the barrel. The specification states: "The plunger seal around the head of the plunger is conventional." ('584 patent, col. 24, ll. 24-25) This sentence is at the end of the paragraph discussing the best mode material for the stopper and ring member. This statement refers to the material from which the plunger seal is made. It does not refer to the configuration of the plunger seal because a conventional plunger seal is

configured to wrap around the front of the plunger. The plunger seal in the patent does not have this conventional configuration.

RTI has contended in this case "the components and specifications and processes for the rubber plunger seal (or 'piston'), including without limitation the use of Santoprene rubber with certain hardness (durometer); the importance and effect of the number and placement of peaks on the plunger seal; and the thickness of various parts of the plunger seal" is a trade secret. RTI's prior claim that the particular durometer hardness of the Santoprene® it uses to make the plunger seal is a trade secret is inconsistent with the statement in the specification that the plunger seal is "conventional."

Mr. Shaw testified that the drawings in Exhibit No. DTX109 for the 3 cc plunger seal show Mr. Shaw's design work. Additionally, Mr. Shaw testified that Exhibit Nos. DTX107-113 are drawings for the VanishPoint plunger seal. All of the plunger seal drawings in Exhibit Nos. DTX107-113 show that the plunger seal was made out of Santoprene® 181-55 (or 181-64 in the case of the 1 cc syringe). By stating in the patents that the plunger seal is "conventional," the patents failed to disclose the best mode for the plunger seal materials known by Mr. Shaw at the time the patent applications were filed, Santoprene® 181-55 and 181-64 that RTI originally claimed were trade secrets.

Accordingly, OMI is entitled to Judgment as a Matter of Law that the claims of the '584 patent are invalid for failure to disclose the best mode material for plunger seal which was known to the inventors at the time the patent application was filed.

    c. **Seat for the Needle in the Needle Holder**

The asserted claims of the '584 patent all include a needle holder or a retraction mechanism (which in the patent includes a needle holder) as one of the syringe components.

Mr. Shaw testified that when the '584 patent application was filed, Mr. Shaw understood that the use of a seat in the needle holder provides advantages over a needle holder without a seat. The drawings in Exhibit Nos. DTX146-147 are dated from the late 1990s (before the application for the '584 patent was filed in 2000) to as recently as 2007 and all of these drawings depict a seat for the needle in the needle holder.

The '584 patent does not disclose the use of a seat in the needle holder. Because the '584 patent does not describe a seat for the needle holder, the patent does not disclose the best mode for the needle holder contemplated by Mr. Shaw at the time the patent application was filed.

Accordingly, OMI is entitled to Judgment as a Matter of Law that the claims of the '584 patent are invalid for failure to disclose the best mode of using a seat for the needle in the needle holder which was known to the inventors at the time the patent application was filed.

### d. Use of a Ridge on the Inside of the Barrel

The asserted claims of the '584 patent all include a barrel as one of the syringe components. Mr. Shaw testified that RTI has been using a ridge on the inside of the barrel of the VanishPoint syringes since 1998. According to Mr. Shaw's testimony, the ridge provides advantages over a barrel without them, including providing an extra margin of safety against the force of the spring. The ridge on the barrel is not disclosed in the '584 patent. Because the '584 patent does not describe a ridge on the barrel, the patent does not disclose the best mode for the barrel contemplated by Mr. Shaw at the time the patent application was filed.

Accordingly, OMI is entitled to Judgment as a Matter of Law that the claims of the '584 patent are invalid for failure to specify the best mode of using a ridge on the inside of the barrel which was known to the inventors at the time the application was filed.

## III. MISAPPROPRIATION OF TRADE SECRETS

### 1. RTI Has Not Established That It Has Protectable Trade Secrets

OMI is entitled, as a matter of law, to Judgment against RTI's trade secret misappropriation claim on grounds that there is a complete absence of proof that RTI has protectable trade secrets under Texas law.

One who fails to take reasonable precautions to secure the secrecy of information cannot claim that information is a trade secret. *See Phillips v. Frey,* 20 F.3d 623, 630-31 (5th Cir. 1994) (Texas law). RTI failed to treat the technical information it allegedly transferred to Double Dove under § 18.2 of the 2002 and 2003 Manufacturing Agreements with Double Dove, which governs how trade secret information is to be disclosed. Texas law recognizes action for trade secret misappropriation, not confidential information misappropriation. *See Stewart & Stevenson Services, Inc. v. Serv-Tech, Inc.*, 879 S.W.2d 89, 99 (Tex. 1994) (there is no cause of action for misappropriation of confidential information that does not amount to trade secret). Neither RTI nor Double Dove followed any of these procedures designed to protect the alleged trade secrets. Furthermore, Mike Shao testified that Double Dove did not understand that the information conveyed to it from RTI's employees was supposed to be treated as trade secret or confidential information, at least initially. His wife, Judy Zhu, testified that she never knew when she delivered the alleged trade secrets to Double Dove about the terms of the Manufacturing Contract, including what obligations Double Dove and RTI had to protect any alleged trade secrets.

In short, this complete lapse by RTI to treat the information as a trade secret and to protect safeguard the information disqualifies RTI from now being able to claim that it had trade secrets. Furthermore, Mr. Elson testified that information that RTI is asserting as trade secrets

do not qualify as trade secrets because RTI's test protocols and packaging specifications are based upon publicly available information and regulatory standards.

Accordingly, OMI is entitled, as a matter of law, to Judgment against RTI's trade secret misappropriation claim should be entered because RTI has not met its burden to show that it has legally protectable trade secrets.

**2. RTI Has Not Established That OMI Used Any RTI Trade Secrets**

OMI is entitled, as a matter of law, to Judgment on RTI's trade secret misappropriation claim on grounds that RTI has offered no proof that OMI used RTI confidential information in OMI's products or manufacturing process.

Under Texas law, in order to prevail with its trade secret misappropriation claim, RTI has the burden to prove that OMI used or disclosed RTI's asserted trade secrets. *See Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 463 (Tex. App.—Austin 2004, pet. denied). RTI does not link any alleged trade secret to OMI's use in its products or manufacturing methods. RTI has, at best, cited miscellaneous documents suggesting that an OMI employee had possession of an alleged RTI trade secret. However, evidence of possession is not evidence of use because it requires multiple inferences to reach the required showing of use, and "inferences stacked only upon inference is no evidence." *Id.* at 465.

RTI does not provide evidence of OMI's use of its asserted trade secrets because it fails to identify where in OMI's products or manufacturing methods OMI allegedly used RTI's asserted trade secrets. Accordingly, as a matter of law, Judgment against RTI's trade secret misappropriation should be entered because RTI has not met his burden to produce actual facts showing that OMI used each alleged trade secret.

### 3. RTI Has Not Established That RTI Suffered Any Damages As A Result Of OMI's Alleged Trade Secret Misappropriation

OMI is entitled, as a matter of law, to Judgment against RTI's trade secret misappropriation claim on grounds there is a complete absence of proof that RTI has suffered any damages.

RTI's trade secret misappropriation damage model assumes that OMI used RTI's trade secrets. Without evidence of use, RTI has no evidence of damage. Moreover, RTI offers no opinion on what the damages might be if OMI merely used RTI's alleged trade secrets in OMI's initial development of its products, even if it chose not to use RTI's alleged trade secrets in the ultimate OMI products. Thus, RTI has no evidence of damage because RTI's use theory is that OMI at one time used the alleged trade secrets, but ceased to use the asserted trade secrets at some point during OMI's development effort. Without damages for its trade secret claim, this claim must fail because damages are a required element of this claim. *See Trilogy*, 143 S.W.3d at 463.

Accordingly, as a matter of law, Judgment against RTI's trade secret misappropriation should be entered because RTI has not met his burden to produce concrete and particular facts establishing trade secret damages.

### 4. RTI's Trade Secret Misappropriation Claim Is Barred By The Statute Of Limitations

OMI is entitled, as a matter of law, to Judgment on RTI's trade secret misappropriation claim on grounds that RTI's misappropriation claim is barred by the statute of limitations.

Texas Law specifies a three-year statute of limitations for bringing an action for Trade Secret Misappropriation. Tex. Civ. Prac. & Rem. Code § 16.010(a). RTI's misappropriation claim is barred because it accrued on October 24, 2003, the date that OMI entered into an

agreement with China Medical, 4½ years before RTI filed suit in this district on April 1, 2008 (with a corresponding April 1, 2005 bar date for this claim). This accrual date is applicable for all alleged trade secret misappropriations that are based on this single nucleus of operative facts, i.e., the alleged disclosure of RTI confidential information to OMI by Double Dove for the manufacture of retractable syringes in China. *See* Tex. Civ. Prac. & Rem. Code § 16.010(b)("[a] misappropriation of trade secrets that continues over time is a single cause of action and the limitations period described by [Tex. Civ. Prac. & Rem. Code § 16.010(a)] begins running without regard to whether the misappropriation is a single or continuous act").

The Texas Supreme Court has described the discovery rule as "a very limited exception to statutes of limitations," and has condoned its use only when the nature of the plaintiff's injury is both inherently undiscoverable and objectively unverifiable. *Computer Associates International, Inc. v. Altai.,* 918 S.W.2d 453, 455 (Tex. 1996). Even if the discovery rule was applicable in this case, RTI's claim of trade secret misappropriation would still be barred by the statute of limitations. Mr. Shaw testified that Mr. Shao communicated to him in early 2004 about non-Chinese (and likely non-Double Dove personnel) in the facility where its alleged trade secrets were in use. Additionally, Mr. Shaw testified about his awareness of an October 4, 2004 letter from his lawyers to OMI that unequivocally admitted that it considered Double Dove to have possession of confidential and trade secret information of RTI and that it was prepared to take any legal action necessary to protect its patented and unpatented technology. Mr. Kiehne testified that OMI received the October 4, 2004 letter that threatened litigation for the alleged misappropriation of RTI confidential information. The aforementioned letter clearly illustrates that RTI was on notice to its any alleged trade secret misappropriation on or before October 4, 2004 – well before the critical April 1, 2005 bar date for RTI's misappropriation claims.

Texas Supreme Court has held that, under the discovery rule, accrual of a cause of action will be deferred if: (1) the cause of action is not discovered as a result of fraud or fraudulent concealment; or (2) the cause of action is one that is "inherently undiscoverable." *S.V. v. R.V.,* 933 S.W.2d 1, 6 (Tex. 1996). The facts in this case do not support deferral of the accrual of RTI's alleged misappropriation claim. First, as noted by the Texas Supreme Court, "[w]hile trade secret misappropriations might not be quickly discovered, this isolated fact does not alter the reality that, in most cases, trade secret misappropriation generally is capable of detection within the time allotted for bringing such suits." *Computer Associates*, 918 S.W.2d at 457. Second, RTI has not put forth any evidence of fraudulent concealment.

Accordingly, as a matter of law, Judgment against RTI's trade secret misappropriation should be entered because RTI's misappropriation claim is barred by the statute of limitations.

## IV. CONCLUSION

For the foregoing reasons, Judgment as a Matter of Law should enter in favor of OMI on all of RTI's claims.

Dated: : December 18, 2009

Respectfully Submitted

*/s/ Thomas A. Miller*
Thomas A. Miller
  Texas Bar No. 14116520
Stephen L. Lundwall
  Texas Bar No. 12696980
Kevin A. Keeling
  Texas Bar No. 24060075
Wade A. Johnson
  Texas Bar No. 24062197
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, Texas 77002
Telephone: (713) 787-1400
Facsimile: (713) 787-1440
Email: millert@howrey.com
Email: lundwalls@howrey.com

*Of Counsel*:

S. Calvin Capshaw
   Texas Bar No. 03783900
Elizabeth L. DeRieux
   Texas Bar No. 05770585
D. Jeffrey Rambin
  Texas Bar No. 00791478
Jessica Hannah
   Texas Bar No. 261802
CAPSHAW DERIEUX LLP
1127 Judson Road, Suite 200
Longview, Texas 75601-5157
Telephone: (903) 236-9800

Facsimile: (903) 236-8787  
Email: ccapshaw@capshawlaw.com  
Email: ederieux@capshawlaw.com  
Email: jrambin@capshawlaw.com  
Email: jhannah@capshawlaw.com  

Email: keelingk@howrey.com  
Email: johnsonw@howrey.com  

ATTORNEYS FOR DEFENDANT  
OCCUPATIONAL & MEDICAL  
INNOVATIONS, LTD.

DM_US:22985299_1

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record who are deemed to have consented to electronic service via the Court's ECF system per Local Rule CV-5(a)(3) on the 18th day of December, 2009.

                                      /s/ *Thomas A. Miller*
                                      Thomas A. Miller